OFFICE OF ATTORNEY GENERAL, Commonwealth of Pennsylvania and Attorney General Michael Fisher, Petitioners,

v.

COUNCIL 13, AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL–CIO, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1999.

Decided Nov. 9, 1999.

Reargument Denied Jan. 20, 2000.

Karl A. Fritton, Philadelphia, for petitioners.

Alaine S. Williams, Philadelphia, for respondent.

Before COLINS, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

COLINS, Judge.

The Office of the Attorney General (OAG) appeals from a decision of an arbitrator that reduced the OAG's sanctioning of James Liptak, a narcotics agent employed by the OAG, from a discharge to a disciplinary suspension followed by reinstatement. The arbitrator's order further provided that if, during the first three months following said reinstatement, Liptak committed an offense warranting suspension, his original discharge would be reinstated. We reverse.

The following events led to the November 1998 discharge of Liptak, who at that time was employed by the OAG as a Narcotics Agent II. On August 27, 1998, Liptak and his wife spent a portion of the early evening at Wolfendale's Bar in Indiana Borough, Pennsylvania. After returning home, Liptak decided to go out again, to a convenience store since he was hungry, and to fill his state vehicle with gas.

On his way to the convenience store, Liptak spotted the bar owner, Nathaniel

Arthurs, standing outside. Liptak states that he had some matter to discuss with Arthurs and entered the bar where he played darts and consumed three drinks. He further states that while at the bar, he overheard a female patron ask Arthurs if the latter knew of drug availability. Liptak claims that he started a conversation with the aforementioned patron, who wished to go to another bar to check the availability of drugs, and that he offered to take the woman to investigate what could be a drug outlet.

The record indicates that while en route to his vehicle, Liptak was observed by an attorney who stopped a police officer, Brian Murphy, as the latter was driving past Wolfendale's Bar. The attorney advised Officer Murphy that Liptak appeared intoxicated and had a woman with him as he entered his vehicle. After requesting back-up that was provided by Police Officers Scott Schuller and Charles Kelly, Murphy followed Liptak's vehicle for a brief distance before signaling Liptak to pull over.

According to Officer Murphy, Liptak exhibited signs of intoxication including slurred speech, glassy eyes, an unsteady gait, and an odor of alcohol. Having recognized Liptak as a state employee, Officer Murphy asked him if he was on duty. After initially evading the question, Liptak ultimately stated that he was involved in doing state work. According to Officers Murphy and Schuller, when Liptak was told that he was not in shape to perform any duties, he became hostile, and they arranged for Liptak's wife, an assistant district attorney, to pick him up.

Subsequently, Liptak was interviewed by Fred Neal, Investigative Supervisor, which interview eventually led to an investigation headed by Special Agent Jeanne R. Berlin. On October 26, 1998, Liptak was notified of the following charges against him: unbecoming conduct; use of alcohol while off-duty; operation of an official vehicle while off-duty and while using alcohol; violation of standards of profes-

sional courtesy and etiquette; and unauthorized use of departmental equipment. The first three charges were marked "sustained" on Agent Berlin's October 28, 1998 report.

As a result of the foregoing incident, on November 17, 1998, Liptak received a letter from the director of the criminal law division of the OAG terminating his services. The matter was submitted to arbitration pursuant to the terms of the collective bargaining agreement (agreement), effective July 1, 1996 to June 30, 1999, between the Commonwealth of Pennsylvania and the American Federation of State, County, and Municipal Employees, AFL–CIO, District Council No. 13 (Union). The parties stipulated that the issue to be determined was whether there was just cause for Liptak's discharge, and, if not, what the appropriate sanction should be. After a hearing on May 4, 1999, at which respective counsel for the OAG and the Union were present, the arbitrator found that although Liptak had committed the misconduct alleged, extenuating circumstances warranted modifying Liptak's discharge to a suspension.

 The OAG now appeals from the arbitrator's decision as being erroneous and contends that pursuant to the agreement, once just cause was found for Liptak's discharge, the arbitrator was without authority to modify the sanction that the OAG had imposed. An appellate court's scope of review of a grievance arbitration award is the "essence test." *Penn Township v. American Federation of State, County and Municipal Employees, AFL–CIO*, 713 A.2d 1218 (Pa.Cmwlth.1998). Under the essence test, the Court is limited "to determining whether the arbitrator's award can in any way be rationally derived from the collective bargaining agreement in light of the language of the agreement, its context and any other indicia of the parties' intention." This Court may not review the merits of the arbitrator's decision, nor may we substitute our judgment for that of the arbitrator, even if

our interpretation of the collective bargaining agreement would differ from that of the arbitrator. *Penn Township* at 1221.

In determining whether the arbitrator erred in modifying Liptak's penalty from discharge to suspension, we look to the relevant terms of the agreement as follows:

Article 28 (Discharge, Demotion, Suspension and Discipline), Section 1, which provides, in pertinent part:

The Employer shall not demote, suspend, discharge or take any disciplinary action against an employe without just cause.

Article 37 (Grievances and Arbitration/Standard Grievance Procedure), Step V, provides, in pertinent part:

The arbitrator shall neither add to, subtract from, nor modify the provisions of this Agreement. The arbitrator shall be confined to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted.

Article 38 (Grievances and Arbitration/Accelerated Grievance Procedure), Section 3, Step 4, provides, in pertinent part:

Each case shall be considered on its merits and the collective bargaining agreement shall constitute the basis upon which the decision shall be rendered.

Article 38 also reiterates Article 37 in stating that:

The arbitrator shall neither add to, subtract from, nor modify the provisions of the Master Agreement. The arbitrator shall be confined to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted.

 The foregoing provisions restrict the arbitrator's decision solely to the issue of determining whether Liptak was discharged for just cause. In the present matter, the arbitrator acknowledges that the misconduct for which Liptak was terminated is not disputed, but proffers mitigating reasons as to why suspension rather than discharge is the appropriate sanction. Comparable issues arose in *Penn Township*, wherein the Court held that

while the arbitrator found that just cause did exist to discipline Guyton, the arbitrator specifically determined that termination was the improper penalty.. However, once the arbitrator determined that Guyton had engaged in the misconduct for which he was terminated so that just cause existed for the Township to discipline Guyton for that conduct, the arbitrator was without authority to alter the discipline imposed by the Township in order to obtain what the arbitrator felt was a more suitable result.... [T]he arbitrator was only to consider the penalty imposed if he found that just cause did *not* exist. Because the arbitrator found that just cause did exist, the arbitrator's modification of the discipline imposed by the Township in this case was improper.

713 A.2d at 1222 (citations and footnote omitted). Applying the foregoing *Penn Township* rationale to the present matter, the arbitrator, having found that just cause existed for sanctioning Liptak, had no authority to modify the penalty imposed.

Accordingly, the arbitrator's decision is reversed.

## ORDER

AND NOW, this 9th day of November 1999 the order of the arbitrator in the above-captioned matter is hereby reversed.